FILED

2006 May-04  AM 09:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| JIMMY MOORE, SR., AND STACIE LYNN, | ] | |
| | ] | |
| Plaintiffs, | ] | |
| | ] | |
| vs. | ] | CV-05-CO-0972-J |
| | ] | |
| ALLSTATE CASUALTY INSURANCE COMPANY, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration Defendant Allstate Casualty Insurance

Company's ("Allstate") motion for summary judgment, which was filed on

February 17, 2006.  (Doc. 26.)  Plaintiffs Jimmy Moore, Sr., and Stacie Lynn

filed suit against Allstate and American Banker Life Assurance Company of

Florida ("American Banker") in the Circuit Court of Walker County, Alabama,

on April 6, 2005, alleging breach of contract, bad faith, and outrage in

connection with the Defendants' denials of Plaintiffs' fire loss claims.  On

May 11, 2005, American Banker removed the complaint to this Court and

Allstate joined in the removal.  American Banker invoked the arbitration

provision in its policy and is no longer a party in this suit.  The issues raised

in Allstate's motion are now ripe for decision.  Upon full consideration of

the legal arguments and evidence presented, Defendant's motion is due to

be granted with regard to Plaintiffs' claims of bad faith and outrage.

Plaintiffs's breach of contract remains.

II.     Facts.[1]

In the summer of 2004, Plaintiff Stacie Lynn contacted Allstate agent

Vanessa Beard for information about obtaining an Allstate policy to insure

a mobile home.  (Lynn Dep. at 68.)  Lynn explained to Beard that she lived

in a mobile home that was owned by her step-father, Plaintiff Jimmy Moore.

(*Id*. at 74.)  Beard told Lynn that Allstate would not insure the property

because she was not the owner, and no policy was issued.  (*Id*.)

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts
claimed to be undisputed, their respective responses to those submissions, the parties'
Joint Status Report, and the Court's own examination of the evidentiary record.  All
reasonable doubts about the facts have been resolved in favor of the nonmoving party.
*See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).
These are the "facts" for summary judgment purposes only.  They may not be the actual
facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th
Cir. 1994).

A few months later, in September 2004, Lynn again contacted Beard and applied for an insurance policy. (*Id.*) Lynn provided information indicating that Moore was to be the insured; she gave Moore's name, address, Social Security number, date of birth, and other general information. (*Id.*) The agency noted the information given by Lynn on the insurance application and sent it to Moore for his signature. (*Id.* at 74-76.) Moore, however, did not see or sign the application. (*Id.* at 75.) Instead, Lynn reviewed the application, signed Moore's name, and returned it to the agent's office. (*Id.*)

The application submitted to Allstate contained numerous inaccuracies, which were admitted by Lynn in her deposition. (*Id.* at 79-80; *see also* Application, Def.'s Ex. B.) First, the application states that Moore is the sole resident of the mobile home. (Application at 1, 3.) It is undisputed that this representation is false. Lynn and Moore testified that Moore never lived in the mobile home and that none of his belongings, other than a few pieces of clothing, were located in the mobile home. (Lynn Dep. at 80-81; Moore Dep. at 86.) Instead, Moore lived with his wife in a house

located on the same property where the mobile home was located.  (Moore Dep. at 86.)

Second, the application states that Moore moved into the mobile home in May 2001.  (Application at 1.)  Lynn admitted that this date is actually the date that she moved into the mobile home.  (Lynn Dep. at 79-80.)  The applicant, Moore, never lived in the mobile home.  (*Id.*)

Third, the application stated that no children resided in the mobile home and that the total number of residents was one.  (Application at 1.)  Lynn admitted at her deposition that both representations were false.  (Lynn Dep. at 80.)  Instead, it is undisputed that Lynn and her daughter lived in the mobile home at the time the application was completed.  (*Id.*)

The policy was bound on September 9, 2004.  (*Id.* at 81.) On September 13, 2004, Lynn signed and dated the insurance policy in Moore's name.  (*Id.*)  Two days after Lynn forged her step-father's signature on the policy, on September 15, 2004, the mobile home burned.  The fire resulted in a total loss of the mobile home.

Sometime after the fire, Allstate learned that Lynn was having significant financial difficulty.  Collections actions had been initiated, her

electricity was cut off, she had received a DUI, one of her vehicles had been repossessed, and she was not making payments on her other vehicle and knew it would soon be repossessed.  (*Id.* at 65-66.)  Lynn had also previously filed for bankruptcy in 1998.  (*Id.* at 14.)

After the fire, Plaintiffs made a claim on the insurance policy, and Allstate began an investigation into Plaintiffs' claims.  Allstate retained a fire cause and origin investigator to determine what caused the fire.  (Barkley Dep. at 17-18; *see also* Reports of Cause and Origin Investigation, Def.'s Exs. E and F.)  Allstate also retained an attorney to review the claim, all available information, and to render a coverage opinion.  (Barkley Dep. at 64-65; *see also* Williamson Aff. ¶¶ 1-2.)

The cause and origin investigation stated that "[t]here is evidence of abnormally high heat causing extreme damage in the right side."  (Report of Cause and Origin Investigation Part I at 4.)  For example, "[t]he 'I' beams, which are the main foundation supports, are twisted and exhibit intense oxidation with blistering and flaking of the metal surfaces."  (*Id.*)  Additionally, "[s]everal of the concrete block pillars in this area exhibit extreme damage and are spalled," which is "the break down of concrete

materials due to exposure to high heat." (*Id*.)   The cause and origin

investigation concluded that "this fire originated in the crawl space

underneath the mobile home" and was "incendiary in nature and burned in

a manner consistent with the use of an ignitable liquid underneath the right

side." (*Id*. at 5.)

Sue Williamson, the attorney retained by Allstate to render a coverage

opinion, conducted examinations under oath of Lynn and Moore.

(Williamson Aff. ¶ 2.)  She also reviewed Allstate's complete file regarding

the fire.  (*Id*.)  Williamson concluded that Allstate had no obligation to pay

the claim.   (*Id*.)   She made this recommendation for the following four

reasons:

> (a) The fire was caused or procured by any insured; and/or
> (b) The insured's violation of the concealment and fraud provisions of the insurance contract; and/or
> (c) The insured made material misrepresentations to Allstate during  application for insurance in violation of Code of Alabama § 27-14-7 voiding the policy *ab initio*; and/or
> (d) The insured made material misrepresentations to Allstate after the loss breaching the insurance contract and violating Code of Alabama § 27-14-28.

(*Id*. ¶ 3.)

After its investigation, Allstate denied Plaintiffs' claim.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id*. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Discussion.

The complaint alleges breach of contract, bad faith, and outrage under Alabama law.  Allstate contends that it is entitled to summary judgment on all three claims.  The Court addresses each claim below.

A.     Breach of Contract.

Allstate argues that summary judgment is due to be granted because no breach of contract occurred.  Allstate contends that, based on the misrepresentations on the application, Plaintiffs were not entitled to

recover benefits under the policy.[2]  Allstate relies on section 27-14-7 of the

Alabama Code, which provides:

> Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:
> (1) Fraudulent;
> (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
> (3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Ala. Code § 27-14-7 (1975).

Under this Code section, it is not necessary that the insured made the

misrepresentation with an intent to deceive; even if innocently made, an

incorrect statement that was material to the acceptance of the risk assumed

by the insurer or that would have caused the insurer in good faith not to

issue the policy provides a basis for the insurer to avoid the policy.

---

[2] The court rejects Plaintiffs' argument that Allstate waived the defense of misrepresentation.  The pleadings belie any such argument.  Moreover, the record is clear that Plaintiffs were on notice of this defense and have not been prejudiced. *Grant v. Preferred Research*, 885 F.2d 795, 797-98 (11th Cir. 1989).

*Nationwide Mutual Fire Ins. Co. v. Pabon,* 903 So. 2d 759, 766 (Ala. 2004).

To invoke section 27-14-7, an insurer must "establish only that a

misrepresentation in the application was a material contributing influence

that induced the insurer to issue the policy. That the insurer could make its

own investigation does not lessen its right to rely on the representations in

the application."  *Id.* (citing *Reliance Life Ins. Co. v. Sneed,* 117 So. 307

(1928)).

It is undisputed that Lynn made at least three misrepresentations when

she applied for the policy at issue.  First, the application states that Moore

is the sole resident of the mobile home.  (Application at 1, 3.)  It is

undisputed that Moore never lived in the mobile home and that none of his

belongings, other than a few pieces of clothing, were located in the mobile

home.  (Lynn Dep. at 80-81; Moore Dep. at 86.)  Second, the application

states that Moore moved into the mobile home in May 2001.  (Application at

1.)  It is undisputed that Moore never lived in the mobile home and that this

date is actually the date that Lynn moved into the mobile home.  (Lynn Dep.

at 79-80.)  Third, the application states that no children reside in the mobile

home and that the total number of residents was one.  (Application at 1.)

It is undisputed that two people lived in the mobile home, Lynn and her daughter, at the time the application was completed.  (Lynn Dep. at 80.)

Although under Alabama law the materiality of a misrepresentation on an application for an insurance policy is generally a jury question, *Bennett v. Mutual of Omaha Ins. Co.*, 976 F.2d 659, 661 (11th Cir. 1992), some misrepresentations increase the risk of loss as a matter of law and are, therefore, material to the issuance of the policy.  *Pabon*, 903 F.3d at 767 (citations omitted).  Allstate's Financial Risk Consultant, Martha Jacobs, testified that Allstate would not have issued the policy in the absence of the misrepresentations made by Lynn.  (Jacobs Aff.)  Further, even assuming that Moore lived in the mobile home, Jacobs stated that "the policy would not have been issued at the same premium rate had accurate information been given concerning the number of occupants and children residing at the insured mobile home."  (*Id.*)  As such, Lynn's misrepresentations were material as a matter of law to Allstate's acceptance of this risk.  *See Pabon*, 903 F.3d at 767-68.

Plaintiffs contend that the policy was not void because Allstate knew that Lynn and her daughter were living in the mobile home.  Although the

general rule is that "[a]n insurance company does not normally have a duty to inquire further to verify that an applicant has told it the truth," *Old Southern Life Insurance Co. v. Spann*, 472 So. 2d 987,  989 (Ala. 1985), "the law of Alabama is clear that an insurance policy cannot be voided if the insurer either knew the true facts or had sufficient indication that would put a prudent person on notice so as to induce inquiry which, if done with reasonable thoroughness, would have revealed the truth."  *First Fin. Ins. Co. v. Tillery*, 626 So. 2d 1252, 1256 (Ala. 1993) (citations omitted).

As evidence of Allstate's knowledge, Plaintiffs point to the records of Lisa Barkley, a special investigator for Allstate.  Barkley's notes state as follows:

> [I] called agent again since I met with Stacie and Mr. Moore yesterday - they knew that Stacie Lynn lived in the trailer with her daughter.  Off and on with [Lynn's] husband - not living there - The trailer was in Mr. Moore's name.  That is why the policy is in his name.  Vanessa's daughter, Christy,  knows Stacie Lynn. That is how she got the insurance.

(Pl.'s Ex. 2.)   Allstate argues that this evidence does not show that Allstate knew the misrepresentations in the application were false because Barkley's

notes were taken after the issuance of the policy, during the fire investigation by Allstate.

Allstate's argument ignores a basic rule of agency law in Alabama. Section 8-2-8 of the Alabama Code provides that "[a]s against a principal, both principal and agent are deemed to have notice of whatever either has notice of and ought in good faith and the exercise of ordinary care and diligence to communicate to the other." Ala. Code § 8-2-8 (1975).  Reading the evidence in the light most favorable to Plaintiffs, the record creates a genuine issue of material fact as to whether the agent, Beard, knew that the material misrepresentations in the application were false.   Barkley's notes state that Beard knew that Lynn and her daughter lived in the mobile home, although it is unclear as to when Beard knew this information.   This evidence creates a genuine issue of material fact as to the first misrepresentation relied on by Allstate to void the policy, that Moore was the sole resident of the mobile home, and the third misrepresentation relied on by Allstate, that no children lived in the home and the total number of residents was one.  It also calls into question the second misrepresentation relied on by Allstate to void the policy.  Because an agent's knowledge is

imputed to the principal under Alabama law, *see id.*, summary judgment is

due to be denied as to this claim.

      B.    Bad Faith.

      An insurer is liable for its refusal to pay a direct claim when there is

no lawful basis for the refusal coupled with actual knowledge of that fact.

*Davis v. Cotton States Mut. Ins. Co.*, 604 So. 2d 354, 359 (Ala. 1992). No

lawful basis "means that the insurer lacks a legitimate or arguable reason

for failing to pay the claim." *Gulf Atlantic Life Ins. Co. v. Barnes*, 405 So.

2d 916, 924 (Ala. 1981). As such, to establish a "bad faith refusal" claim

under Alabama law, the plaintiff must prove the following:

> (a) an insurance contract between the parties and a breach
> thereof by the defendant;
> (b) an intentional refusal to pay the insured's claim;
> (c) the absence of any reasonably legitimate or arguable reason
> for that refusal (the absence of a debatable reason);
> (d) the insurer's actual knowledge of the absence of any
> legitimate or arguable reason;
> (e) if the intentional failure to determine the existence of a
> lawful basis is relied upon, the plaintiff must prove the insurer's
> intentional failure to determine whether there is a legitimate or
> arguable reason to refuse to pay the claim.

*Nat'l Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982). In

sum, the plaintiff must go beyond a mere showing of nonpayment and prove

a bad faith nonpayment, a nonpayment without any reasonable ground for dispute.  *Id.*   "[S]tated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim." *Id.*

The general rule under Alabama law is that to show a lack of a debatable reason, the insured must be entitled to a directed verdict on the breach of contract claim.  *See Ins. Co. of North America v. Citizens Bank of Thomasville*, 491 So. 2d 880, 883 (Ala. 1986).  Negligent interpretation of information is not "bad faith" as a matter of law: "an insurer is not liable in a bad faith action simply because it has exercised poor judgment or has been negligent." *Aplin v. American Sur. Ins. Co.*, 568 So. 2d 757, 760 (Ala. 1990).  "[T]he insured must eliminate any arguable reason propounded by the insurer for refusing to pay the claim."  *LeFevre v. Westberry*, 590 So. 2d 154, 159 (Ala. 1991) (quoting *Burns v. Motors Ins. Corp.*, 530 So. 2d 824, 827 (Ala. Civ. App. 1987)).

Plaintiffs' bad faith claim fails because they failed to prove that there was an absence of an arguable or debatable basis for denying the claim. Instead, Allstate had multiple bases for denying the claim.  It is undisputed

that numerous misrepresentations were made in the application for the policy and that the policy would not have been issued in the absence of those material misrepresentations. Additionally, Allstate relied on a cause and origin investigation that revealed that the fire was incendiary in nature, in combination with the suspicious fact that the policy was bound just six days before the fire and executed two days before the fire. Moreover, at the time of the fire, Lynn was having serious financial difficulties. This evidence is not even addressed by the Plaintiffs. Finally, the record reveals that misrepresentations were made in submitting the claim to Allstate, in that the fire investigation concluded that numerous items contained within the contents inventory submitted by Plaintiffs to Allstate were not in the home at the time of the fire.[3] (*See* Report of Cause and Origin Investigation Part II.) All of these factors, separate or in combination, provided Allstate with an arguable or debatable reason to deny the claim. As such, summary judgment is due to be granted on Plaintiffs' claim of bad faith.

---

[3] That Lynn testified that she recovered two of the items listed, the box springs and 3 VCR's, at the scene of the fire, does not create a genuine issue of material fact as to the other sixteen listed items.

C.    Outrage.

To establish outrage, Moore and Lynn must show that (1) Allstate "either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from their conduct;" (2) the conduct in question "was extreme and outrageous;" and (3) the "conduct caused emotional distress so severe that no reasonable person could be expected to endure it." *Stabler v. City of Mobile*, 844 So. 2d 555, 560 (Ala. 2002). "By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *American Road Service Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980). Thus, "outrage is a very limited cause of action that is available only in the most egregious circumstances."  *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1044 (Ala. 1993).

The Alabama Supreme Court has generally acknowledged only three types of cases that constitute successful outrage claims: (1) cases involving "wrongful conduct in the context of family burials;" (2) cases in which "insurance agents employ[ ] heavy-handed, barbaric means . . . to coerce

. . . insured[s] into settling . . . insurance claim[s];" and (3) cases "involving

particularly egregious sexual harassment." *Id.*; *see also Stabler*, 844 So. 2d

at 560. This case falls into none of these categories and is not comparable

to the circumstances where the tort of outrage is recognized by Alabama

law.  The denial of the policy was in no way "so outrageous in character and

so extreme in degree as to go beyond all possible bounds of decency, and

to be regarded as atrocious and utterly intolerable in a civilized society."

*Inmon*, 394 So. 2d at 365.  As such, summary judgment is due to be granted

on Plaintiffs' claim of outrage.

V.     Conclusion.

For the reasons stated above, Defendant's Motion for Summary

Judgment is due to be granted regarding Plaintiffs' claims of bad faith

and outrage.  Plaintiffs' breach of contract claim remains.  A separate

order in conformity with this opinion will be entered.

Done this <u>3rd</u> day of <u>May 2006</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153